898 F.2d 146
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
NORTHSIDE PHARMACY, INC., Plaintiff-Appellant,
v.
OWENS & MINOR, INC., Defendant-Appellee.
 No. 88-3059.
 United States Court of Appeals, Fourth Circuit.
 Argued: Oct. 30, 1989.
Decided: Feb. 21, 1990.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Terrence W. Boyle, District Judge. (CA-87-322-5-CIV)
 Katherine Elizabeth Jean, James Morris Kimzey, McMillan, Kimzey & Smith, Raleigh, North Carolina, for appellant.
 Lester Neal Ellis, Jr., Hunton & Williams, on brief: Stephanie W. Humrickhouse, Hunton & Williams, Raleigh, North Carolina, for appellee.
 E.D.N.C.
 REVERSED AND REMANDED.
 Before DONALD RUSSELL, Circuit Judge, BUTZNER, Senior Circuit Judge, and HIRAM H. WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 In this appeal we consider whether North Carolina's statute of limitations precludes Northside Pharmacy (Northside) from suing Owens and Minor, Inc. (Owens) for a breach of contract. We find that the statute does not bar the suit, and, accordingly, we reverse the directed verdict in favor of Owens and remand the case for further proceedings.
 
 
 2
 Northside is a retail drug store located in Raleigh, North Carolina. The dispute between the parties stems from Northside's efforts to computerize the pricing and supply of its inventory. Northside purchased a computer system in 1982, which allowed it to place orders for new stock directly with Owens, a wholesale drug company. Owens supplied Northside with most of its retail sale items. The computer also automatically calculated the retail price for prescription drugs from a data base listing products carried by Owens. The computer was not capable, however, of updating changes in the price of prescription drugs in the data base. For these Northside had to check invoice sheets by hand and manually enter any changes into the computer.
 
 
 3
 Northside decided to buy a computer price update service from Owens in order to eliminate the need for manual price checking. Under the terms of the contract, Northside was allowed for a monthly fee "to call the Owens and Minor computer no more than twice per week to receive the latest available average wholesale price" of Owens's prescription and over the counter products. Either party could terminate the agreement by written notice at any time. The contract was signed on February 28, 1983, and Owens began providing price updates in May.
 
 
 4
 Northside later discovered a problem with the service. The numbers used by the computer to identify Owens's products were periodically subject to change without notice from Owens. When Northside scanned its computer for updates, nothing in the transmission of price information alerted it to changes in the identification numbers, called National Drug Code (NDC) numbers. Without knowledge of the NDC changes, Northside could not follow price revisions for products with new NDC numbers. The store had abandoned the only other means for checking prices for these products--the manual comparison of NDC numbers and product prices on invoices--believing that the update service would do this automatically. As a result, Northside charged less than its customary markup for products with new NDC numbers, because it did not pass on the price changes (which were invariably increases) to its customers, and its gross profits decreased. The store claims that Owens breached its duty to provide accurate pricing information by failing to notify Northside of the NDC changes.
 
 
 5
 Northside sued in a North Carolina state court in 1987 not long after it discovered the problem of changing numbers. The case was soon removed to federal court under diversity jurisdiction and went to trial. At the close of Northside's evidence the district court granted Owens a directed verdict, concluding that the breach of contract claim was stale under North Carolina's statute of limitations. The statute limits recovery "upon a contract, obligation or liability arising out of a contract" to suits brought within three years after a cause of action accrues. See N.C.Gen.Stat. Sec. 1-52(1) (1983). The court found that the breach occurred, if at all, when the update service began in 1983. The court stressed that any breach happened at the outset of the contractual relationship.
 
 
 6
 Owens urges us to accept this view of the contract. Owens considers its obligation to provide price information finite and noncontinuing. It had a duty to set up the price update service so that the system worked accurately. Any flow of inaccurate or incomplete information which followed a breach of that duty would be, in the words of the district court, "collateral to the core of the breach." Owens finds this case similar to others under North Carolina law in which a party provides a faulty product or service and has no ongoing obligation to perform. In such cases, North Carolina law provides that a cause of action accrues at the time the substandard product or service is provided. E.g., Thurston Motor Lines, Inc. v. General Motor Corp., 258 N.C. 323, 128 S.E.2d 413 (1962) (faulty carburetor); Jewell v. Price, 264 N.C. 459, 142 S.E.2d 1 (1965) (defective furnace). By analogy, Owens contends that if it broke the contract by providing an inaccurate update system, Northside's claim accrued in May 1983 when the service started, over three years before this suit was filed.
 
 
 7
 North Carolina law, however, recognizes that some contracts create ongoing obligations which may give rise to numerous breaches of a continuing contractual duty. In such cases, every failure to satisfy an obligation creates a distinct cause of action and carries with it a separate statute of limitations. If, for example, a party is obliged to make a stream of payments under a lease agreement, each failure to pay in accordance with the lease will create a cause of action, and the three year statute will apply anew to each breach. See United States Leasing Corp. v. Everett, Creach, Hancock and Herzig, 88 N.C.App. 418, 426, 363 S.E.2d 665, 669 (1988); Lane v. Wingate, 25 N.C. 326, 330-32 (1943) (support of slave); cf. Duke Univ. v. St. Paul Mercury Ins. Co., --- N.C.App. ----, 384 S.E.2d 36, 41 (1989) (duty to defend).
 
 
 8
 The agreement here created precisely such an ongoing obligation in Owens. Owens was required to transmit price updates in exchange for monthly user payments. The duty to transmit extended beyond the installation of the service; it lasted until one of the parties terminated the contract with written notice. If Owens has breached its duty--and we do not decide that question--the statute of limitations bars recovery only for transmissions which occurred more than three years before the suit commenced.
 
 
 9
 We remand the case for further proceedings consistent with this opinion. We do not address the denial of Northside's motion to exclude certain expert testimony, because it is not properly before us. See Dilly v. S.S. Kresge, 606 F.2d 62, 63 (4th Cir.1979).
 
 
 10
 REVERSED AND REMANDED.